UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PENG WANG, a foreign individual,<br><br>     Plaintiff,<br><br>vs.<br><br>PRODIGY NETWORK, LLC, a Delaware limited liability company, 17 JOHN PREFERRED, INC, a Delaware corporation, 1234 W RANDOLPH NEWCO, INC, a Delaware corporation, and 1400 N ORLEANS NEWCO, INC, a Delaware corporation,<br><br>     Defendants. | Civil Action No.:<br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

Plaintiff Peng Wang ("Plaintiff" or "Wang"), by and through his undersigned counsel, files this Complaint against Defendants Prodigy Network, LLC, 17 John Preferred, Inc., 1234 W Randolph NewCo, Inc., and 1400 N Orleans NewCo, Inc. (together "Defendants"), and alleges:

## NATURE OF THE ACTION

1. This action is brought to recover damages arising out of the Defendants' breach of their agreements with the Plaintiff, as detailed herein.

## PARTIES

2. Plaintiff Peng Wang is a citizen and resident of the People's Republic of China ("PRC").

3. Defendant Prodigy Network, LLC ("Prodigy") is a Delaware limited liability company with its principal place of business in the State of New York. Upon information and belief, none of Prodigy's members are citizens of the PRC.

4.   Defendant 17 John Preferred, Inc. ("Preferred") is a Delaware corporation, with its principal place of business in the State of New York.

5.   Defendant 1234 W Randolph NewCo, Inc. ("Randolph"), is a Delaware corporation, and upon information and belief its principal place of business is in the State of New York.

6.   Defendant 1400 N Orleans NewCo, Inc. ("Orleans"), is a Delaware corporation, and upon information and belief its principal place of business is in the State of New York.

## JURISDICTION AND VENUE

7.   This Court has subject matter jurisdiction over the parties and the claims of this action pursuant to 28 U.S.C. § 1332(a)(2) because the action is between citizens of different states and the amount in controversy exceeds $75,000.

8.   This Court has personal jurisdiction over the parties and venue is proper in this Court, pursuant to Section X, of the applicable Subscription Agreements, which provide in relevant part:

> This Subscription Agreement shall be governed by the laws of New York. Each party irrevocably agrees to submit to the exclusive jurisdiction of the state and federal courts situated in New York City, New York over any claim arising under or in connection with this Subscription Agreement.

9.   Venue is also proper pursuant to 28 U.S.C. § 1391 because the Defendants maintain their principal place of business, and a substantial portion of the events that give rise to the underlying claims occurred, in the Southern District of New York.

## FACTUAL BACKGROUND

10. Prodigy is in the business of providing real estate investment opportunities to international clientele; it operates the majority of its real estate opportunities through its various subsidiaries and affiliates.

11. Investments in any opportunity were sold according to the terms of a Private Offering Memorandum that was tailored for each individual opportunity.

2

12. Prodigy acted as the Investment Manager for every investment opportunity offered through their subsidiaries and affiliates according to the terms of the applicable Private Offering Memorandum (generally, the "Memos").

13. In addition, Prodigy, in its role as Investment Manager, was responsible for the formation of a "NewCo" to correspond to each investment opportunity offered. These NewCos served as the vehicle through which foreign investors, such as the Plaintiff here, would invest in any given opportunity.

14. Prospective investors would make an equity investment and/or a loan to the NewCo, which would in turn dump the proceeds of the equity investment and/or loan to the capital of the corresponding Master Series of the Prodigy Shorewood Master REP Fund, LLC, in exchange for interests in the aforementioned Master Series.

15. To entice investors to participate in the various opportunities marketed, Prodigy offered initial equity investors, such as the Plaintiff, opportunities to invest with a voluntary redemption option, or some form of guaranteed right to distribution. An initial equity investor could redeem its investment plus 18% interest after 12-months simply by providing Prodigy Network with a 90-day written redemption notice, or enjoy the right to a return of its investment plus varying rates of interest at a pre-determined time in the life of the investment.

16. Plaintiff did invest in various opportunities as marketed by and through Prodigy. Plaintiff did begin to invest with the Defendants in or around November 2017, concluding in or around April 2019.

17. In order to make any investment, the prospective investor first had to sign a Subscription Agreement, which incorporated by reference the terms of the Private Offering Memorandum and any amended, restated, or supplemental addendum thereto.

18. A brief discussion of Wang's particular investments with Prodigy and its various subsidiaries and affiliates that are named as Defendants in this action follows:

**A.   17 John Preferred, Inc.**

19. Plaintiff Peng Wang invested in an opportunity located at 17 John Street in New York's financial district and marketed by Prodigy.

20. The opportunity at 17 John Street was marketed to Plaintiff Peng Wang through marketing materials provided by Colin Serling, a Client Relationship Associate of Prodigy Network.

21. Investment opportunities in this particular offering were sold pursuant to an Amended and Restated Confidential Private Offering Memorandum of Preferred, dated March 15, 2017 (the "Preferred Memo").

22. Section X of the Preferred Memo provided that "With respect to (i) the Domestic Feeder, the term "Interests" shall refer to the membership interests of a series of the Domestic Feeder relating to a series of the Master Fund; (ii) the Offshore Feeder, the term "Interests" shall refer to the LP Interests of the Offshore Feeder relating to a series of the Master Fund; and (iii) a NewCo, the term "Interests" shall refer to common stock issued by such NewCo. The term "Investor" shall refer to a holder of Interests."

23. Section XI of the Preferred Memo provided that "Holders of Class-B Common Stock may not voluntarily redeem such stock without written consent of the Investment Manager."

24. Section VI of the Preferred Memo provided that "Prodigy Shorewood Investment Management, LLC (*or an affiliate thereof*) will serve as the investment manager of the JV and the Pref Fund[1]." (emphasis added).  The Pref Fund was administered by NESF Fund Services Corp.

---

[1] The term "Pref Fund" is the term used in the Preferred Offering Memo to describe investments made into Preferred.

and NESF was tasked with confirming each investment through the issuance of a "Contract Note" to the individual investor.

25. On or about November 27, 2017, Plaintiff Peng signed a Subscription Agreement for the Preferred Class B Common Stock and Class Investor Loan.  Specifically, Plaintiff Peng agreed to purchase membership interests in Preferred in the form of Class B Common Stock in the amount of $125,000, and to make a Class A Investor Loan to Preferred in the amount of $375,000.  The NESF Contract Note was issued to Plaintiff Peng on December 19, 2017.

**B.  1400 N Orleans NewCo, Inc.**

26. In addition to the Preferred project, Plaintiff Peng Wang did invest in an opportunity marketed by Prodigy and located at 1400 N. Orleans Street, in Chicago, Illinois.

27. Investment interests in the Project were sold pursuant to an Amended and Restated Confidential Private Offering Memorandum of Prodigy Shorewood Master REP Fund, LLC; Prodigy Shorewood Domestic Feeder REP Fund, LLC; 1400 N Orleans NewCo, Inc; and Prodigy Shorewood New York REP Fund, LP dated July 15, 2016, and a Supplement to the Offering Memorandum dated September 25, 2018 (the "Orleans Memo").

28. Pages 15 – 16 of the Orleans Memo, Section "Voluntary Redemption" provided that:

Certain investors will be given the option to redeem at the Redemption Price (as defined below) as indicated in their Subscription Agreement; provided, however, that no such option to redeem at the Redemption Price will be permitted prior to the date that is 12 months after the date that their subscription has been accepted by the Administrator or the Investment Manager (the "Voluntary Redemption Start Date"), and provided, further, that no such investor will be permitted to exercise such redemption option at the Redemption Price after the date that is 16 months after the Voluntary Redemption Start Date. Any notice in respect of any such redemption must be made in writing at least three months prior to any applicable redemption date.

29. The "Redemption Price" is defined within the same section of the Orleans memo as:

[A]n amount equal to the difference of (a) the sum of (x) capital contributions made by such investor in connection with such Domestic Preferred Interest, Offshore Preferred Interest or

NewCo Class B-1 Common Stock and NewCo Loan, as applicable, plus (y) an amount equal to an 14% pre-tax annual compounded return, or such other amount as indicated in the Subscriber's Subscription Agreement to the extent the amount is different (from the date of such capital contributions), on such capital contributions less (b) all amounts previously paid or otherwise distributed to such investor by the 1400 N Orleans Domestic Feeder Series, the 1400 N Orleans Offshore Feeder Series or NewCo in connection with such Domestic Preferred Interest, Offshore Preferred Interest or NewCo Class B-1 Common Stock and NewCo Loan.

30. The cover page of the Supplement to the Orleans Memo provides that the Investment Manager for the opportunity was Prodigy Network, LLC.  The Orleans Fund was administered by NESF Fund Services Corp. and NESF was tasked with confirming each investment through the issuance of a "Contract Note" to the individual investor.

31. Page 3 of the Orleans Memo provides that "The 1400 N Orleans Domestic Feeder Series has authorized the issuance of preferred limited liability company interests (the "Domestic Preferred Interests") and the Domestic Common Interests…"

32. On or about November 30, 2018, Plaintiff Wang signed a Subscription Agreement for Orleans Class B Common Stock and Class Investor Loan.  Specifically, Plaintiff Wang agreed to purchase membership interests in Orleans in the form of Class B Common Stock in the amount of $150,000 and to make a Class A Investor Loan to Orleans, in the amount of $450,000.  The NESF Contract Note was issued to Plaintiff Wang on October 10, 2018.

**C.  1234 W Randolph NewCo, Inc.**

33. Finally, Plaintiff Peng Wang, in addition to investing in the Preferred and Orleans project that was marketed by Prodigy, did also invest in an opportunity located at 1220 and 1234 W. Randolph Street in Chicago, Illinois.

34. Investment interests in the Project were sold pursuant to an Amended and Restated Confidential Private Offering Memorandum of Prodigy Shorewood Master REP Fund, LLC; Prodigy Shorewood Domestic Feeder REP Fund, LLC; 1234 W Randolph NewCo, Inc; and

Prodigy Shorewood New York REP Fund, LP dated July 15, 2016, and a Supplement to the Offering Memorandum dated June 1, 2018 (the "Randolph Memo").

35. Section X of the Preferred Memo provided that "With respect to (i) the Domestic Feeder, the term "Interests" shall refer to the membership interests of a series of the Domestic Feeder relating to a series of the Master Fund; (ii) the Offshore Feeder, the term "Interests" shall refer to the LP Interests of the Offshore Feeder relating to a series of the Master Fund; and (iii) a NewCo, the term "Interests" shall refer to common stock issued by such NewCo. The term "Investor" shall refer to a holder of Interests."

36. Section XI of the Randolph Memo provided that "Unless (a) otherwise specified in the applicable Supplement or (b) approved in writing by the Investment Manager, an Investor may not voluntarily redeem its Interest." Page 14 of the Supplement therein further provided that:

> Certain investors will be given the option to redeem at the Redemption Price (as defined below) as indicated in their Subscription Agreement; provided, however, that no such option to redeem at the Redemption Price will be permitted prior to the date that is 12 months after the date that their subscription has been accepted by the Administrator or the Investment Manager (the "Voluntary Redemption Start Date"), and provided, further, that no such investor will be permitted to exercise such redemption option at the Redemption Price after the date that is 16 months after the Voluntary Redemption Start Date. Any notice in respect of any such redemption must be made in writing at least three months prior to any applicable redemption date.

The 'Redemption Price' was defined as an amount equal to "14% pre-tax annual compounded return."

37. Section VI of the Randolph Memo provided that "Prodigy Network, LLC (*or an affiliate thereof*) will serve as the Investment Manager of each series of the Master Fund, each series of the Domestic Feeder, each series of the Offshore Feeder and each NewCo" (emphasis added).   The Randolph Fund was administered by NESF Fund Services Corp. and NESF was tasked with confirming each investment through the issuance of a "Contract Note" to the individual investor.

38. On or about April 5, 2019, Plaintiff Peng Wang signed a Subscription Agreement for Randolph Class B Common Stock and Class Investor Loan.  Specifically, Plaintiff Wang agreed to purchase interests in Randolph in the form of Class B Common Stock in the amount of $125,000 and to make a Class A Investor Loan to Randolph in the amount of $375,000.  The NESF Contract Note was issued to Plaintiff Wang on April 24, 2019.

39. After making the aforementioned investments, Plaintiff Wang did enjoy the benefit of receiving periodic reports from the Defendants, such as Capital Statements, Distribution Statements, and other Investor Reports (collectively, the "Reports").

40. The Reports were issued on regular intervals, quarterly or otherwise semi-annually. Plaintiff received the last Reports on his investments during spring 2019.  Plaintiff did make several requests for the expected reports.

41. After the unexplained cessation of the Reports, Plaintiff Wang learned that Prodigy was experiencing difficulties meeting its financial obligations, due to mismanagement and other questionable business practices.

42. In or around May 2019, Plaintiff learned that Prodigy's former Chief Operating Officer, Vincent Mikolay, had filed a lawsuit against Prodigy and its former manager, Rodrigo Nino, for defaulting on payment of a redemption request for a unit Prodigy had issued.  As part of that action, Mikolay argued that Prodigy was suffering cash flow problems due to "Rodrigo Nino's poor management and irresponsible financial practices."  Mikolay further argued that Prodigy and Nino were actually alter egos because corporate formalities were consistently ignored and because Prodigy's profits were used for personal expenses by Nino.

43. In or around June 2019, Prodigy, through one of its applicable affiliates, suspended any bi-annual return payments to investors, including the Plaintiff, on any of its investment projects.

According to statements issued by the affiliates for each investment project, the subject investment projects were performing below original projections and subsequently, Prodigy had to contribute $2 million towards working capital, manager loans, and withholding collection of asset management fees, to cover future and present debt obligations as related to each project.

44. Upon information and belief, in a meeting with investors, Rodrigo Nino informed investors that the Defendants did not have enough capital to meet their financial obligations related to the various investment projects, including payment of any pending redemption requests.

45. Wang did timely exercise his right of voluntary redemption in accordance with the terms of the Preferred Memo and on or about October 1, 2019, submitted to Prodigy a written demand to redeem their equity investment and loan.

46. Pursuant to the Preferred Memo, as of November 1, 2019, Prodigy and Preferred were required to redeem the Plaintiff's investment.  To date, those Defendants have refused to honor Plaintiff's redemption demand.

47. Wang did timely exercise his right of voluntary redemption in accordance with the terms of the Orleans Memo and on or about October 1, 2019, submitted to Prodigy a written demand to redeem their equity investment and loan.

48. Pursuant to the Orleans Memo, as of November 1, 2019, Prodigy and Orleans were required to redeem the Plaintiff's investment.  To date, those Defendants have refused to honor Plaintiff's redemptions demand.

49. Pursuant to the Randolph Memo, Plaintiff Wang was entitled to a return of his investment, plus interest at a certain date.  Unfortunately, in or around December 2019, NESF, in its capacity as Administrator of the various Prodigy funds, indicated that the various Prodigy funds' cash balances had decreased so as to leave insufficient funds to complete the projects.

50. Upon information and belief, Prodigy, its various affiliates, and subsidiaries are rapidly approaching insolvency, if that has not already occurred, and it is alleged that the Defendants have used Plaintiff's investments for reasons other than those relating to the projects in which the Plaintiff invested his funds, in clear violation of the terms of each aforementioned Memo.

## COUNT I – BREACH OF CONTRACT

51. Plaintiff realleges, reaffirms, and incorporates by reference paragraphs 1 through 50 above, as if fully set forth herein.

52. Plaintiff entered into valid and binding contracts with the Defendants upon the execution of each Subscription Agreement.

53. Plaintiff executed the Subscription Agreements and timely paid the respective investment amounts to the Defendants.  Plaintiff fully performed his obligations under each respective Subscription Agreement and the documents incorporated therein.

54. Plaintiff sent a timely redemption demand to Defendants Prodigy and its affiliate Preferred, however Defendants Prodigy and Preferred have failed to honor this demand.

55. Plaintiff sent a timely redemption demand to Defendants Prodigy and its affiliate Orleans, however Defendants Prodigy and Orleans have failed to honor this demand.

56. Under the terms of the individual contracts with Defendants Prodigy and its affiliates Randolph and Orleans, Plaintiff was entitled to receive his respective initial investment plus interest.

57. Plaintiff has been damaged by the Defendants' breach of contract by at least $1.6 million plus interest.

58. Accordingly, Plaintiff Wang seeks judgment in his favor, and against the Defendants, for damages in an amount to be determined at trial.

## COUNT II – UNJUST ENRICHMENT

59. Plaintiff realleges, reaffirms, and incorporates by reference paragraphs 1 through 50 above, as if fully set forth herein.

60. Defendants were unjustly enriched at the expense of Plaintiff, particularly by diverting or appropriating Plaintiff's investment funds in order to enrich themselves.

61. It is against equity and good conscience to permit the Defendants' continued retention of funds which were diverted for their own use, including, upon information and belief, the personal expenses of current and former managers and officers.

62. As a direct and proximate result of the Defendants' wrongful diversion of the Plaintiff's investment funds, the Defendants have been unjustly enriched to the Plaintiff's detriment.

63. Accordingly, the Plaintiff is entitled to judgment in his favor for the full amount by which the Defendants have been enriched, in an amount to be determined at trial.

## COUNT III – BREACH OF FIDUCIARY DUTY

64. Plaintiff realleges, reaffirms, and incorporates by reference paragraphs 1 through 50 above, as if fully set forth herein.

65. Defendant Prodigy Network LLC (as the sole director of Defendants Preferred, Orleans, and Randolph) owes Plaintiff (as investor shareholder of Defendants Preferred, Orleans, and Randolph) a fiduciary duty or other trust-based duty with respect to the business and affairs of Defendants Preferred, Orleans, and Randolph.

66. Defendant Prodigy Network LLC has committed misconduct with respect to its fiduciary duties owed to the Plaintiff.

67. Such misconduct by Defendant Prodigy Network LLC includes violations of its duties of candor, loyalty, care, honesty, and/or self-dealing, with respect to its management of Defendants Preferred, Orleans, and Randolph.

68. The Plaintiff has been directly damaged as a result of Defendant Prodigy's misconduct in an amount to be proven at trial.

### COUNT IV – EQUITABLE ACCOUNTING

69. Plaintiff realleges, reaffirms, and incorporates by reference paragraphs 1 through 50 above, as if fully set forth herein.

70. Defendant Prodigy Network LLC (as the sole director of Defendants Preferred, Orleans, and Randolph) owes Plaintiff (as investor shareholder of Defendants Preferred, Orleans, and Randolph) a fiduciary duty or other trust-based duty with respect to the business and affairs of Defendants Preferred, Orleans, and Randolph.

71. As a result of this fiduciary or other trust-based duty between Defendant Prodigy Network LLC, as the managing director of Defendants Preferred, Orleans, and Randolph, and the Plaintiff as an investor shareholder, the Plaintiff is entitled to an accounting with respect to Defendants Preferred, Orleans, and Randolph.

72. Plaintiff has previously demanded such an accounting from each Defendant after the cessation of the Reports.  Such accounting information was normally provided to Plaintiff in the form of the Reports from the Defendants, in regular intervals.

73. The Defendants have failed and/or refused to provide such an accounting to the Plaintiff.

74. Upon information and belief, this refusal is based entirely on the Defendants need to conceal the extent of their misconduct in derogation of the Plaintiff's rights.

75. An accounting is necessary to determine Plaintiff's monetary damages and/or to determine the true and complete picture of Defendants Preferred, Orleans, and Randolph's financial affairs. An accounting is also necessary to determine Defendant Prodigy's financial affairs as may be related to Plaintiff's damages.

76. The accounting is applicable to Defendants Preferred, Orleans, and Randolph for each annual year of their operation and management by Defendant Prodigy, and for Defendant Prodigy for the same period of time.

## COUNT V – DEMAND FOR INSPECTION OF BOOKS AND RECORDS

77. Plaintiff realleges, reaffirms, and incorporates by reference paragraphs 1 through 50 above, as if fully set forth herein.

78. Plaintiff is an investor shareholder of Defendants Preferred, Orleans, and Randolph, each of which is a Delaware corporation, with their principal places of business in New York, New York.

79. Upon information and belief, Defendant Prodigy, in its capacity as the sole managing director of Defendants Preferred, Orleans, and Randolph, has committed various acts of misconduct and breached various fiduciary duties owed to investor shareholder Plaintiff.

80. Section 624(b) of the New York Business Corporation Law (the "BCL Law") permits a shareholder to inspect and make extracts thereof the books and records of a corporation, as defined under subsection (a), upon at least 5 days written notice to the corporation.

81. Plaintiff has made such a good faith written demand upon Defendants by letter.

82. Plaintiff is entitled, pursuant to the BCL Law, to inspect the books and records of the Defendants.

83. In addition, Plaintiff is entitled under the common law to inspect the books and records of the Defendants.

84. By reason of the foregoing, the Plaintiff is entitled to a declaratory judgment against Defendants Preferred, Orleans, and Randolph declaring that they each must grant the Plaintiff a full inspection of their books and records.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), the Plaintiff requests a trial by jury in this matter on all issues so triable.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Peng Wang seeks judgment in his favor and against the Defendants Prodigy Network, LLC, 17 John Preferred, Inc., 1234 W Randolph NewCo, Inc., and 1400 N Orleans NewCo, Inc., for:

   a.  Actual damages in an amount to be determined and proven at trial; and

   b.  Interest and costs; and

   c.  Plaintiff access and the right to inspect the Defendants books and records; and

   d.  such other and equitable relief as this Court deems just and proper.

Dated: September 8, 2020
       New York, NY

By: /s/ Katherine Burghardt Kramer
    Katherine Burghardt Kramer
    Rongping Wu
    DGW KRAMER LLP
    One Rockefeller Plaza; Ste. 1060
    New York, NY 10020
    T: (917) 688-2585
    F: (917) 633-6183
    kkramer@dgwllp.com
    lwu@dgwllp.com
    *Attorneys for Plaintiff*

14